Wayne L. Hill and Kathryn B. Hill v. Commissioner. F. T. (Festus T.) Chaffee and Jewell E. Chaffee v. Commissioner.
Hill v. Commissioner
Docket Nos. 3889-66, 3890-66.
United States Tax Court
T.C. Memo 1969-247; 1969 Tax Ct. Memo LEXIS 46; 28 T.C.M. (CCH) 1273; T.C.M. (RIA) 69247; November 24, 1969, Filed *46 Murray F. Hardesty, 3410 Van Buren, Topeka, Kan. for the petitioners. Larry K. Hercules and Rex Guest, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1959, 1960, and 1961 as follows: Dkt. No.
Petitioners
Year
Deficiency
3889-66
Wayne L. Hill and Kathryn B. Hill
1959
$7,784.39
1960
9,961.76
1961
5,799.11
3890-66
F.T. (Festus T.) Chaffee and Jewell E. Chaffee
1959
7,918
E. Chaffee
1959
7,918.60
1960
6,078.24
1961
8,374.35
Two issues are presented for decision. The principal issue relates to the value of certain debentures. Another issue concerns the deductibility of certain business expenses. Findings of Fact Some of the facts have been stipulated and are found accordingly. Wayne L. Hill (hereinafter referred to as Hill) and Kathryn B. Hill are husband and wife. They resided in Tecumseh, Kansas, at the time their petition in this case was filed. They filed joint Federal income tax returns for 1959, 1960, and 1961 with the district director of internal revenue, Wichita, Kansas. *47 F. T. (Festus T.) Chaffee (hereinafter referred to as Chaffee) and Jewell E. Chaffee are husband and wife. They resided in Topeka, Kansas, at the time their petition in this case was filed. They filed joint Federal income tax returns for 1959, 1960, and 1961 with the district director of internal revenue, Wichita, Kansas. The above-named women are petitioners solely because they filed joint Federal income tax returns with their husbands for 1959, 1960, and 1961. Thus, when reference is made to the taxpayers as petitioners, the reference is solely to the husbands. In 1958 Hill and Chaffee formed a partnership known as Amalgamated Enterprises (hereinafter referred to as Amalgamated). Amalgamated performed plumbing work by furnishing materials and services as a subcontractor under the prime contractor, Linquist Construction Company, during the construction of three Holiday Inn motels. As to one motel at Topeka, Amalgamated commenced work during July 1958 and completed its work during July 1959. In payment thereof it received cash in the amount of $26,256.82 and debentures of Kansas Super Motels, Inc., having a total par value of $50,000. The debentures bore interest at the rate *48 of 8 percent per annum and carried an additional premium so that they were redeemable in 5 years at 135 percent of face value and in 10 years at 170 percent of face value. Using the completed contract method of accounting on its 1959 Federal partnership income tax return, Amalgamated reported expenses of $46,168.97 and receipts of $46,168.97. Amalgamated also valued, for income tax purposes, the debentures on the basis of the excess amount of expenses incurred over the total cash received in payment for the services performed. Amalgamated reported the debentures in this manner rather than at their face values. A second motel which Amalgamated helped to construct was at Fluer Drive in Des Moines, Iowa. Amalgamated commenced work on said motel during July 1959 and completed the work during July 1960. In payment thereof it received cash of $70,450.45 and debentures of Iowa Super Hotels, Inc., having a total par value of $50,000. The debentures bore the same interest and premium rates as the debentures of Kansas 1274 Super Motels, Inc. Using the completed contract method of accounting on its 1960 Federal partnership income tax return, Amalgamated reported expenses of $83,081.70 and *49 receipts of $83,081.70. The bonds received were valued under such method on the basis of the excess amount of expenses incurred over the total cash received in payment for the services performed. Amalgamated furnished material and services toward a third motel which was located at 14th and Euclid, Des Moines, Iowa. Amalgamated commenced work on said motel during July 1960 and completed the work during February or March 1961. In payment thereof it received cash in the amount of $85,000 as well as $20,000 par value of the aforesaid Iowa Super Hotels, Inc., debentures and $30,000 par value of the aforesaid Kansas Super Motels, Inc., debentures. Using the completed contract method of accounting on its 1961 Federal partnership income tax return, Amalgamated reported expenses of $113,833.79 and receipts of $113,833.79. The bonds were valued by the partnership on the basis of the excess amount of expenses incurred over the total cash received in payment for the services performed. The typical bond received by Amalgamated read in part: KANSAS SUPER MOTELS, INC. 15 YEAR 8% BOND @KANSAS SUPER MOTELS, INC., a DUE JULY 8, 1973 Kansas corporation, herein called the Corporation, for value *50 received, hereby promises to pay to bearer, at the office of the Corporation in Topeka, Kansas on July 8, 1973, the principal sum of $1,000.00, and to pay interest on the principal sum at the rate of 8% per annum until payment of the principal sum shall have been made or provided for. Interest shall be payable annually, on the 30th day of June of each year until the principal sum shall have been paid. The bondholder may bring action to collect unpaid interest, but such action cannot be taken as to unpaid interest accumulated during the first three years the bond is issued until after the end of the third year, nor may such action be taken as to unpaid interest accumulated during the second three year period. This restriction shall apply in like manner to subsequent three year periods. The date the bond is issued shall be the beginning date in measuring any time period stated above. Interest on this bond is payable in priority, determined annually, (1) to dividends on any common stock issued by this Corporation and (2) to any salary payable to any officer-stockholder. All bonds of this issue rank equally and ratably and without priority over one another. The Bondholder shall have *51 the right to require the Corporation to redeem this bond on January 1, 1964, at the rate of $135.00 for each $100.00 face value of the bond, or on January 1, 1969, at the rate of $170.00 for each $100.00 face value of the bond, provided, that the holder must give the Corporation written notice of his intention to have this redeemed, stating the face value thereof, at least 120 days before such fifth or tenth anniversary of the issuance has passed. This bond is the obligation of the Corporation only. * * * The prices charged by Amalgamated during construction of the three motels were not inflated to reflect the acceptance of bonds as part payment. During the years in issue various persons purchased the above-described debentures at par value. The purchasers were attracted by the high return of interest and many of them acquired the debentures for investment purposes. In the statement attached to his notices of deficiency respondent stated that the debentures should have been included in gross income at their face values in the year that the underlying contracts were completed. Ultimate Finding of Fact The fair market values of the aforementioned debentures for purposes *52 of inclusion in Amalgamated's gross income were the same as their face values. Opinion The principal issue for decision relates to the value at which Amalgamated should have included certain debentures in gross income. Amalgamated performed plumbing work by furnishing materials and services as a subcontractor under the prime contractor, Linquist Construction Company, during the construction of three motels. As consideration for such work Amalgamated received debentures and cash. Amalgamated reported its income during the years in issue under the completed contract method of accounting. 1275 Claiming that the fair market values of the bonds were less than their face values, Amalgamated included such bonds in gross income at their purported fair market values. Respondent's position is that Amalgamated should have included the bonds in gross income at their face values. To resolve the issue before the Court we must first determine the fair market values of such bonds. If we find that the fair market values of the bonds are less than their face values, as petitioners contend, we must decide which measure of value is the proper one. This Court has long recognized that the *53 completed contract method of accounting is basically an accrual method. , affd. (C.A. 5, 1946). Accordingly, the time for ascertaining the value of the debentures in question is at the date the underlying contracts were completed. After reviewing the testimony presented, we have concluded that on the date of completion of all the underlying contacts the fair market values of the debentures were the same as their face values. We think that respondent introduced sufficient evidence to support his deficiency notices. Even without the benefit of the evidence submitted by respondent we would have to conclude that petitioners failed to carry their burden of proof. By definition, fair market value means the price at which a willing buyer and a willing seller would arrive, after negotiation for sale, where neither is acting under compulsion. (C.A. 9, 1958), affirming a Memorandum Opinion of this Court. In the case at bar the debentures which Amalgamated received were issued by Kansas Super Motels, Inc., and Iowa Super Hotels, Inc. Neither of these *54 corporations ever sold any bonds from the issues in question at amounts other than par. The corporations placed a high rate of annual return (15 percent) upon the debentures so that they would be an attractive investment not-withstanding any risks associated therewith. This tactic proved to be successful with the investors. The issuing corporations sold at least 29 bonds during the years in question to purchasers other than petitioners at amounts equal to par. Several of the purchasers testified that they considered the bonds a good speculative investment. They emphasized the alluring attraction of the high yields. Inasmuch as we have found that the fair market values of the debentures on the dates Amalgamated completed the contracts were the same as their face values, we do not reach the legal question as to which measure of value we might otherwise use to compute Amalgamated's gross income under the circumstances presented. The second issue presented for decision concerns whether petitioners in Docket No. 3890-66 are entitled to a deduction in 1961 for business expenses in the amount of $6,963.18. In the absence of any evidence in the record on this issue we have no alternative *55 but to hold that these petitioners failed to meet their burden of proof on this issue. Decisions will be entered for the respondent.